UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MARK EARL WHITE,

    Plaintiff,    Case No. 1:19-cv-948

v.    Honorable Robert J. Jonker

CORIZON, INC. et al.,

    Defendants.
_____/

## **OPINION**

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 and the Americans With Disabilites Act (ADA), 42 U.S.C. § 12101 et seq. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Badder and Aetna Life & Casualty. The Court also will dismiss Plaintiff's pending motions.

**Discussion**

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility and the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan and the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. Plaintiff sues the following Defendants in their official and personal capacities: Corizon, Inc.; MDOC Acting Chief Medical Officer (ACMO) Dr. (unknown) Coleman; Aetna Life & Casualty; Corizon Doctor Peter E. Sices, who is employed at IBC and MTU; Corizon Physician Assistant E. Coe Hill and Nurse (unknown) Stillman, who are employed at LCF; and Corizon Nurse Kristie Badder, who is employed at MTU.

Plaintiff raises a number of claims about Defendants' failures to provide constitutionally adequate medical care for his serious medical needs from March 2018 to the present. On March 23, 2018, Plaintiff went to health care at MTU for treatment of a severe gastrointestinal virus. Plaintiff asked the nurse to look up who had cancelled his diabetic snack bag the previous night, while he was on insulin therapy for his diabetes, because he needed the name to file a grievance. The nurse responded, "if you are going to start that sh*t you can leave." (Compl., ECF No. 1, PageID.6.) When Plaintiff asked for the nurse's name, she responded, "Nurse Pr*ck. Later that day, Plaintiff filed a grievance against Defendant Sices for removing his snack-bag accommodation, despite the fact that Plaintiff was on insulin, which could cause dangerously low blood sugar. Plaintiff alleges that Defendant Sices has been the subject of multiple complaints, due to his attempts to cut medical costs.

On March 26, 2018, Plaintiff saw Defendant Sices about renewal of Plaintiff's accommodations. Defendant Sices tested Plaintiff's feet and confirmed neuropathy. Sices

2

informed Plaintiff, however, that Defendant ACMO Coleman had denied the renewal of neoprene braces for Plaintiff's right knee and left ankle, which had been issued as permanent accommodations in 2010.

Approximately a year later, on March 25, 2019, Plaintiff was sent to Duane Waters Hospital (DWH) by a healthcare provider at LCF for an assessment for a knee replacement. A DWH physical therapist noted a serious discrepancy in leg length, with the right leg shorter by 1.5 to 2 inches, due to bone bowing from the removal of the right leg brace. The therapist recommended a "patellar tracking brace" to forestall the need for a knee replacement within the next year. The therapist also recommended orthopedic athletic shoes with an insole and adjusters to increase the right leg length. Defendants Coe Hill and Coleman denied the claims, ostensibly based on guidelines established by Defendant Aetna, which were adopted by the MDOC and Corizon. Plaintiff appealed, allegedly submitting documentation showing that state-issued shoes cut into Plaintiff's feet and caused problems, due to his diabetic neuropathy. Plaintiff's request for orthopedic athletic shoes was again denied. Plaintiff was provided state-issued shoes, which severely cut and scarred Plaintiff's right foot. Plaintiff filed a grievance. The shoes were stolen when Plaintiff was transferred on July 21, 2019, and, at the time of filing, Plaintiff had not yet received replacements.

Plaintiff also complains that the two-inch lifts provided in the state shoes were too high, causing Plaintiff to walk off-balance. On June 11, 2019, while Plaintiff again was arguing for placement at LCF in the handicap unit, one of the elderly inmates lost control of his dog, which crashed into Plaintiff's left leg and caused Plaintiff to fail. Plaintiff began suffering numbness and severe nerve pain in his lower back and right leg. Plaintiff was seen the following day, for substantial bruising on his leg and lower back. Plaintiff underwent x-rays, which showed a serious

3

deformity in the L-4/L-5 spine that was crushing the sciatic nerve. Plaintiff requested an air mattress and pillow, which were recommended by the x-ray technician. The technician also advised Plaintiff to stay off his feet until he had surgery. On July 10, 2019, healthcare issued a wheelchair to Plaintiff. Two days later, however, Defendant Stillman ordered Plaintiff to return the wheelchair to healthcare and to use the "unit chair," that is, the wheelchair in his unit. (Compl., ECF No. 1, PageID.8.) Plaintiff explained that the unit chair was being used by a gang member who threatened anyone who attempted to use the chair. Defendant Stillman, however, did not change her order.

Due to the intense nerve pain in his lower back and right leg, Plaintiff sought nerve-pain medication on two occasions. Nurse Practitioner Groff (not a Defendant) advised Plaintiff that, because he was on Ultram for arthritis and a prior injury to the T-5 spine, a request for additional pain medication could result in Corizon cancelling the Ultram and refusing to reissue it. Plaintiff complained to the LCF psychiatrist that he was suffering depression and nerve pain. The psychiatrist ordered 80 mg of Cymbalta to treat the depression and nerve pain. Plaintiff received some relief from the Cymbalta. However, when he was transferred to IBC, the attending psychiatrist immediately reduced the dose to 20 mg, which resulted in a recurrence of severe pain. Plaintiff then asked for nerve-pain medication from Defendant Sices. Sices responded that Ultram treated nerve pain and that Plaintiff had already been on Ultram too long. Defendant Sices warned Plaintiff that, if he grieved the denial of additional medication, Sices would take Plaintiff's Ultram away and give him nothing. Defendant Sices told Plaintiff, "You are costing too much." (Compl., ECF No. 1, PageID.9.) Plaintiff was too terrified of losing his pain medication to file a grievance.

On August 19, 2019, Plaintiff was taken to a neurology clinic. Doctor Dimosthenis Constantinos Dafnis (not a Defendant) conducted a nerve test on Plaintiff's sciatic nerve,

4

remarking that Plaintiff had the worst case he had ever seen and recommending an immediate MRI and surgery. The doctor advised that, until the surgery, Plaintiff required a soft mattress and a pillow for placement between his legs. Physician Assistant Roslyn Jindal (not a Defendant) submitted requests for all of the accommodations, but Defendant Coleman denied them.

On September 2, 2019, after another transfer, Plaintiff met with Defendant Sices at IBC. Defendant Sices recorded that the numbness in Plaintiff's right leg had spread to the lower back, left arm, and whole leg. Sices therefore ordered an MRI, which was performed on October 22, 2019, at Sparrow Hospital. The MRI technician advised Plaintiff that, as a result of the delays in treatment, Plaintiff had nerve damage that would get worse and result in paralysis if not treated soon. Plaintiff filed a grievance seeking emergency processing of surgery to prevent the swift degeneration of his nerves and to prevent paralysis in his right arm and hand.

On October 1, 2019, Defendant Sices abruptly removed Plaintiff from insulin therapy and snack-bag detail, citing an A1c test[1] that purportedly did not qualify for diabetes treatment under the Corizon and Aetna guidelines. Plaintiff had been actively treated for diabetes for ten years and had been issued his own glucometer in 2010. On October 22, 2019, without examining Plaintiff, Defendant Sices ordered Plaintiff to return all diabetic material. Plaintiff attempted to return some Metformin, which he had been using to self-medicate his diabetes, but the duty nurse advised Plaintiff to keep it. Plaintiff explained that he was trying to comply with a direct order. Shortly thereafter, a custody staff member came to search for the Metformin. Plaintiff tested his blood one last time, recording a blood sugar of 183. Plaintiff filed an emergency grievance against Defendant Sices, indicating that the removal of diabetic treatment was life

---

[1] The hemoglobin A1c test measures a glycoprotein formed when glucose binds to hemoglobin A in the blood. The test is used as a means of assessing a patient's average blood sugar concentrations for the preceding two to three months. *See* Merriam Webster Online Dictionary, https://www.merriam-webster.com/dictionary/hemoglobin%20A1c (last visited February 4, 2020).

threatening and could result in Plaintiff going into hyperglycemic coma. On November 22, 2019, after 56 days of being denied diabetic treatment, Plaintiff met with Defendant Sices. Defendant Sices agreed to approve Glucophage (Metformin) and Glipizide. Plaintiff asked for a high-protein diet to accompany the Glipizide. Defendant Sices accused Plaintiff of attempting to sabotage Defendant Sices attempts to save money to pay for Plaintiff's upcoming specialist review and surgeries.

Plaintiff alleges that, when he arrived at IBC in September 2019, his A1c was 6.2, with an average blood sugar in the 90 to 113 range. On November 22, 2019, Plaintiff's A1c had risen to 7.0. Plaintiff alleges that the rapid rise in his A1c over 56 days was the result of Defendant Sices' refusal to treat Plaintiff's diabetes over that time period.

Plaintiff seeks compensatory and punitive damages, together with preliminary and permanent injunctive relief and declaratory relief.

On December 26, 2019, Plaintiff submitted a motion to supplement the pleadings (ECF No. 5). Plaintiff also filed a motion for preliminary injunctive relief (ECF No. 6) on January 1, 2020, which was received by the Court on January 10, 2020. With his motion for preliminary injunctive relief, Plaintiff also filed a motion to expedite (ECF No. 7).

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

## III. Defendant Badder

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v.*

*Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991).

Plaintiff fails to even mention Defendant Badder in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). As a consequence, Plaintiff fails to state a claim against Defendant Badder.

### IV. Defendant Aetna Life & Casualty

Plaintiff alleges that Defendant Corizon and the MDOC have adopted formulary and reimbursement standards used by Aetna Life & Casualty for coverage of their insured. He asserts that the standards established by Aetna were used by Defendants to deprive Plaintiff of constitutionally adequate medical care.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*,

8

102 F.3d at 814. There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

Where a defendant is not a state official, his conduct will be deemed to constitute state action only if it meets one of three narrow tests. The first is the symbiotic relationship test, or nexus test, in which the inquiry focuses on whether "the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 357-58 (1974). Second, the state compulsion test describes situations "in which the government has coerced or at least significantly encouraged the action alleged to violate the Constitution." *NBC v. Commc'ns Workers of Am.,* 860 F.2d 1022, 1026 (11th Cir. 1988); *accord Blum v. Yaretsky,* 457 U.S. 991, 1004 (1982); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 170 (1970). Finally, the public function test covers private actors performing functions "traditionally the exclusive prerogative of the State." *Jackson,* 419 U.S. at 353; *accord West,* 487 U.S. at 49-50. *See generally, Lugar,* 457 U.S. at 936-39 (discussing three tests).

Plaintiff has not presented any allegations by which Aetna's conduct could be fairly attributed to the State. The Supreme Court has held that, even when an insurer has withheld a payment for disputed medical treatment under a state's workers compensation system, the insurer is not a state actor. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 44 (1999). The *Sullivan* Court recognized that "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." *Id.* at 52 (internal quotations omitted).

Here, Plaintiff fails even to allege that Defendant Aetna provides insurance reimbursement to Corizon in the course of Corizon's delivery of health care to prisoners. Even had he so alleged, his allegations would be insufficient. The complaint is devoid of facts that suggest the existence of a symbiotic-relationship or state-compulsion tests. The only possibility for state action lies under the public-function test.

As the Eastern District of Michigan has recognized, however, the use of Aetna as a third-party administrator for off-site prisoner health care services required by Corizon to treat Michigan prisoners does not convert Aetna into a state actor. *Rhinehart v. Scutt*, No. 2:11-CV-11254-DT, 2014 WL 5361936, at *22 (E.D. Mich. June 20, 2014) (R&R), *adopted on other grounds by* 2014 WL 5361939 (E.D. Mich. Oct. 21, 2014). Even if Aetna provides administrative services to Corizon for health-care coverage, as the magistrate judge recognized in *Rhinehart*, Aetna's duties lie under the administration contract and are limited to processing and paying claims for services. They are not related to the actual delivery of health care services or to any other function that "has been 'traditionally the exclusive prerogative of the State.'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (quoting *Jackson*, 419 U.S. at 353), *quoted in Rhinehart*, 2014 WL 5361936, at *23. Plaintiff fails to allege that Aetna was engaged in a public function.

Moreover, even were Defendant Aetna properly considered a state actor under the public-function test, Plaintiff's allegations fall short of stating a claim against Aetna. A private entity which contracts with the state to perform a traditional state function like providing healthcare to inmates may "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins,* 487 U.S. 42, 54 (1988)). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.,* 7 F.

App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978), has been extended to private corporations); *Street,* 102 F.3d at 817-18 (same); *Rojas v. Alexander's Dep't Store, Inc.,* 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson,* 579 F. Supp. 2d 831, 851-52 (E.D. Mich. 2008) (same).

Consequently, Aetna, like a governmental entity, may be held liable under § 1983 only if it actually caused the constitutional deprivation. *See id.* (citing *Monell*, 436 U.S. at 690. Liability in a § 1983 action cannot be based on a theory of *respondeat superior. Id.* "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the [entity] may be held liable under § 1983." *Id.* (quoting *City of Canton v. Harris,* 489 U.S. 378, 385 (1989) (internal quotation marks omitted). A custom is a practice "that has not been formally approved by an appropriate decision maker," but is "so widespread as to have the force of law." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 404 (1997). Moreover, the policy or custom "must be the moving force of the constitutional violation." *Searcy,* 38 F.3d at 286 (internal quotation marks omitted).

In this case, Plaintiff fails to allege any specific facts regarding Defendant Aetna, much less facts showing that Defendant Aetna had had a policy or custom of refusing to cover constitutionally adequate health care to prisoners. Therefore, Defendant Aetna is properly dismissed for this alternative reason.

In sum, Plaintiff's complaint against Defendant Aetna will be dismissed for failure to state a claim, both because Aetna is not a state actor and because Plaintiff has failed to allege facts demonstrating the existence of a policy or custom by Aetna that caused an injury to Plaintiff.

## V.     Defendants Corizon, Coleman, Sices, Coe Hill, & Stillman

Plaintiff alleges that Defendants Coleman, Sices, Coe Hill, and Stillman were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. He

11

further alleges that Defendant Corizon had a policy or custom of denying necessary pain relievers surgeries, and assistive devices in order to cut costs.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

12

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).[1] In order to state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant under a Title II claim is the public entity or an

---

[1] Similarly, § 504 of the RA provides in pertinent part:
> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson v. Williamson Cty*, 219 F.3d 555, 557, n.3 (6th Cir. 2000) (citing *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 846, n. 2 (6th Cir. 1995)).

official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396-97 (6th Cir. 2002). Plaintiff has sued the individual Defendants in both their personal and official capacities.

Upon initial review, the Court concludes that Plaintiff's allegations against Defendants Corizon, Coleman, Sices, Coe Hill, and Stillman are sufficient to state both an Eighth Amendment claim and a claim under the ADA. As a consequence, Defendants Corizon, Coleman, Sices, Coe Hill, and Stillman remain in the case.

## VI. Pending Motions

On December 26, 2019, Plaintiff submitted a motion to supplement the pleadings (ECF No. 5). Plaintiff also filed a motion for preliminary injunctive relief (ECF No. 6) on January 1, 2020, which was received on January 10, 2020. With his motion for preliminary injunctive relief, Plaintiff also filed a motion to expedite the hearing on preliminary injunctive relief (ECF No. 7).

### A. Motion to supplement

In his motion, Plaintiff seeks to supplement his complaint with allegations about the exhaustion of his available administrative remedies on grievances about the failure to timely provide proper shoes.

Under Rule 15(d) of the Federal Rules of Civil Procedure, a party may seek and the court may permit supplemental pleadings "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." *Id.* A motion to supplement a complaint under Fed. R. Civ. P. 15(d) is properly addressed to the discretion of the trial court. *Allen v. Reynolds*, No. 89-6124, 1990 WL 12182, at * 2 (6th Cir. Feb. 13, 1990) (*citing Otis Clapp & Sons, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985)). While leave to permit a supplemental pleading is favored, it cannot be used to introduce a separate, distinct and new cause of action. *Planned Parenthood of S. Cali. v. Neeley*, 130 F.3d 400, 402 (9th Cir. 1997). Where a

14

motion seeks to add entirely new claims that occurred before the original pleading, the motion is properly considered to be a motion to amend, not one to supplement. *Michael v. Ghee*, 498 F.3d 372, 386 (6th Cir. 2007); *see also United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002) (within the meaning of Rule 15, supplements relate to events that have transpired *since* the date of the original pleading, while amendments typically rely on matters in place *prior to* the filing of the original pleading).

Although Plaintiff's motion includes only events that occurred after the filing of his complaint, supplementation is not appropriate in this case. The allegations in the proposed supplement do not involve allegedly unconstitutional actions that occurred after filing. Instead, the allegations are related only to Plaintiff's efforts to exhaust his remedies—an affirmative defense that Plaintiff is not required to plead or prove. *See Jones v. Bock*, 549 U.S. 199, 212-16 (2007). As a consequence, supplementation to add allegations about exhaustion is unnecessary. The motion therefore will be denied.

### B. Motion for preliminary injunctive relief and motion to expedite

Plaintiff has filed a motion seeking preliminary injunctive relief, together with a motion to expedite consideration of his request for preliminary relief. Because the Court has considered Plaintiff's pending motions during its initial review of the complaint, Plaintiff's motion for expedited consideration will be denied as moot.

As bases for preliminary injunctive relief, Plaintiff raises a variety of grounds. Plaintiff first contends that he requires immediate relief because he is in immediate danger from a failure to treat his diabetes.

Second, Plaintiff argues that his serious medical conditions require surgery, but Defendants refuse to authorize surgery. More specifically Plaintiff alleges that he requires knee-replacement surgery, because he suffers from continuing and increasing pain arising out of the

15

screws and rods placed in his right thigh and knee after a serious automobile accident in 2009. Plaintiff also contends that Defendants refuse to authorize back surgery and additional pain relievers, despite nerve compression at L-4/L-5 that is causing pain and progressive paralysis.

Third, Plaintiff alleges that he urgently requires orthopedic athletic shoes, due to neuropathy from his diabetes and a shortened leg from the accident.

Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *National Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same). Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984). The

party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. It is not at all clear from Plaintiff's *pro se* complaint or subsequent filings that Plaintiff has a substantial likelihood of success on his Eighth Amendment claims. Although Plaintiff alleges that he is receiving inadequate medical care, Defendants have provided treatment for his many health conditions, even if not to Plaintiff's complete satisfaction. The Court finds that, at this preliminary juncture, Plaintiff's allegations, while plausible, are insufficiently strong to show a substantial likelihood of success on his claims.

Second, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578. Plaintiff's allegations are insufficient to show that he faces an immediate, concrete and irreparable harm in the absence of an injunction. While Plaintiff states that he is in immediate danger from the lack of treatment for his diabetes, he acknowledges in his complaint that Defendant Sices resumed treatment of Plaintiff's diabetes in November 2019. In addition, Plaintiff acknowledges that his problems with his right knee and leg have continued for years and that he receives opioid medication to relieve his pain. Plaintiff's allegation concerning the immediacy of his need for back surgery is based on opinions given to Plaintiff by a physical therapist and an x-ray technician, neither of which is authoritative. As a result, Plaintiff

17

fails to allege facts showing that he faces the sort of immediate and irreparable harm necessary for issuance of preliminary injunctive relief.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. That showing has not been made here.

For all these reasons, although Plaintiff's motions to expedite for preliminary injunctive relief will be denied.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Badder and Aetna Life & Casualty will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's claims against Defendants Corizon, Coleman, Sices, Coe Hill, and Stillman remain in the case. The Court will deny Plaintiff's pending motions (ECF Nos. 5, 6, 7).

An order consistent with this opinion will be entered.

Dated: __February 19, 2020__  /s/ Robert J. Jonker
ROBERT J. JONKER
CHIEF UNITED STATES DISTRICT JUDGE