UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK EARL WHITE,

        Plaintiff,

v.

CORIZON, INC., *et al.*,

        Defendants.
_____/

Case No. 1:19-cv-948

Hon. Hala Y. Jarbou

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a prisoner in the custody of the Michigan Department of Corrections (MDOC). Many of the incidents alleged occurred at the Bellamy Creek Correctional Facility (IBC).[1] Plaintiff's amended complaint (ECF No. 27) restructured the lawsuit, alleging that four defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment: Corizon, Inc. (referred to as "Corizon Health, Inc.", or "Corizon"); MDOC Acting Chief Medical Officer (ACMO) Unknown Coleman (referred to as "Rickey Coleman, D.O." or "Dr. Coleman"); Dr Peter E. Sices; and Nurse Stillman. This matter is now before the Court on a motion for partial summary judgment for failure to exhaust administrative remedies filed by defendants Corizon, Dr. Rickey Coleman and Dr. Peter Sices (ECF No. 28).

---

[1] Plaintiff is currently incarcerated at the Lakeland Correctional Facility (LCF).

1

### I.  Plaintiff's claims against defendants Corizon, Dr. Coleman and Dr. Sices

The amended complaint does not contain separately numbered claims. Based on its review, the Court finds that plaintiff has alleged seven claims against defendants Corizon, Dr. Coleman, and Dr. Sices:

(1) that on or before March 26, 2018, Dr. Coleman denied the renewal of neoprene braces for plaintiff's right knee and ankle (this information was relayed to plaintiff through Dr. Sices) (PageID.298);

(2) that on or before March 23, 2018, Dr. Sices improperly removed plaintiff's accommodation for a diabetic snack bag (PageID.299);

(3) that on or after March 25, 2019, Dr. Coleman denied a therapist's recommendation that plaintiff receive a "patellar tracking brace" to forestall the need for a knee replacement and orthopedic athletic shoes to increase plaintiff's right leg length (PageID.300);

(4) that when plaintiff transferred to IBC, the treating psychiatrist reduced plaintiff's Cymbalta from 80 mg to 20mg (to treat depression and nerve pain), that this resulted in a recurrence of severe pain, that Dr. Sices told plaintiff that his prescription for Ultram treated nerve pain, and that if plaintiff grieved the denial of additional medication Dr. Sices would take away the Ultram (PageID.302);

(5) that on or about August 19, 2019, after an offsite neurologist, Dr. Dafnis, told plaintiff that he needed a soft mattress and a pillow to place between his legs, PA Roslyn Jindal requested the mattress and pillow, but Dr. Coleman denied this requested accommodation; the delay of this accommodation resulted in permanent nerve damage as reflected in an MRI taken on October 22, 2019 as reflected in grievance IBC-19-10-2398-12I3 ("2398") (grieving a life threatening emergent health care issue) (PageID.303);

(6) that on October 1, 2019, Dr. Sices removed plaintiff from insulin therapy and snack-bag detail because he did not qualify for treatment under the guidelines set by former defendant Aetna Life & Casualty, and current defendant Corizon, as outlined in grievances LCF 19-11-2571-12D3 ("2571") and IBC 19-10-2399-28E ("2399") (PageID.304); and,

(7) that defendant Corizon has been deliberately indifferent to plaintiff's serious medical needs by engaging in a "practice of profit before treatment" (PageID.297).

## II.  Defendants' motion for summary judgment

Defendants contend that plaintiff's only properly exhausted claims are that on or before March 23, 2018, Dr. Sices improperly removed plaintiff's accommodation for a diabetic snack bag (claim 2), and that on or after March 25, 2019, Dr. Coleman denied plaintiff receive a "patellar tracking brace" orthopedic athletic shoes (claim 3).[2] Defendants seek summary judgment on the remaining claims asserted against defendants Dr. Coleman, Dr. Sices, and Corizon.

### A.  Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

[2] The Court notes that defendants' brief refers to the diabetic snack bag claim against Dr. Sices as claim (1) and the orthopedic shoes/patellar brace claim against Dr. Coleman as claim (3). *See* Defendants' Brief (ECF No. 28, PageID.363). Later, however, defendants refer to the orthopedic shoes/patellar brace claim against Dr. Coleman as claim (2). *Id.* at PageID.369.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

**B.    Lack of Exhaustion**

**1.    Exhaustion requirement**

Defendants contend that plaintiff failed to exhaust some of his claims. The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.[3]

---

[3] The MDOC revised its July 9, 2007 grievance policy on March 18, 2019. Plaintiff's grievances filed in 2019 were subject to the March 18, 2019 version of policy. For purposes of this report, the operative elements of the 2019 version (*i.e.*, the requirements and procedures for filing grievances) are the same as set forth in the 2007 version. *See* PD 03.02.130 (eff. March 18, 2019) ( ¶¶ Q, S, W, DD, HH).

5

### 3. Discussion

#### a. Dr. Coleman denied a neoprene brace for plaintiff's right knee and left ankle (claim 1)

Plaintiff alleged that on or about March 26, 2018, Dr. Sices examined him for renewal of accommodations. Amend. Compl. at PageID.298. Dr. Sices confirmed neuropathy due to type 2 diabetes. *Id*. Then, Dr. Sices allegedly told plaintiff that the ACMO (Dr. Coleman) had denied the request to renew neoprene braces for plaintiff's right knee and left ankle with the explanation "No longer meets the guidelines for treatment." *Id*. Plaintiff addressed the neoprene braces in grievance MTU-18-03-0267-12I ("267"), stating that "[o]n 3/26/18 Dr. Sices despite a PERMANENT accommodation confiscated the braces" and that he tried to resolve the grievance when he "spoke with Dr. Sices" on that date. Grievance 267 (ECF No. 28-3, PageID.556-560).[4] Plaintiff claimed that Dr. Sices violated his Eighth Amendment rights and was discriminating against him "for poverty" and wanted the MDOC to "Investigate for IMMEDIATE punitive action." *Id*. Grievance 267 was clearly directed at Dr. Sices for "confiscating" the braces, not Dr. Coleman for removing the accommodation. The Step I grievance failed to name Dr. Coleman as required by the policy directive. *See* Policy Directive 03.02.130 ¶ R (eff. July 9, 2007) ("Dates, times, places and names of all those involved in the issue being grieved are to be included"). Plaintiff has failed to properly exhaust this claim against Dr. Coleman. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendants' motion for summary judgment should be granted with respect to plaintiff's claim 1 directed at Dr. Coleman.

---

[4] The record for grievance 267 includes a Step II response dated "4/30/18", which is identified as a response to grievance "MTU 2018 03 356 12H" [sic] rather 267, the grievance under consideration (*see* ECF No. 28-3, PageID.558). Given the context, it appears that the 4/30/18 response was related to the neoprene braces (ECF No. 28-3, PageID.558) grieved in 267.

6

### b.   Dr. Sices denied plaintiff's request for nerve and pain medication (claim 4)

Plaintiff does not contest that he failed to file a grievance related to the pain medication. In his amended complaint, plaintiff stated that he "was too TERRIFIED to write a grievance on this issue." PageID.302.[5] Plaintiff made the statement against Dr. Sices "under penalty of perjury" pursuant to 28 U.S.C. § 1746. Amend. Compl. at PageID.305.

In *Ross v. Blake*, -- U.S. --, 136 S. Ct. 1850, 1859 (2016), the Supreme Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S.Ct. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use," meaning that "no ordinary prisoner can discern or navigate it." *Id*. Third, exhaustion is not available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860.

Here, plaintiff's claim meets the third *Ross* circumstance, *i.e.*, that Dr. Sices intimidated plaintiff by threatening to take away plaintiff's current pain medication if he filed a grievance asking for additional pain medication. Based on plaintiff's declaration, a genuine issue of fact exists as to whether Dr. Sices thwarted plaintiff from taking advantage of the grievance

---

[5] Plaintiff claims that he filed a grievance "after the threat", referring to grievance IBC-19-12-2705-12I3 ("2705"). Amend Comp. at PageID.302. Grievance 2705 (ECF No. 28-2, PageID.423-427) involves an incident date of December 11, 2019, about one month after plaintiff filed this lawsuit. At that time, plaintiff claims that Dr. Sices, Dr. Coleman and Corizon "are refusing all [accommodations] due to guidelines set forth by Aetna Life & Casualty." *Id*. at PageID.426.

process. Accordingly, defendants' motion for summary judgment should be denied with respect to claim 4 directed at Dr. Sices.

        **c.**      **Dr. Coleman denied a soft mattress and a pillow to use in between plaintiff's legs (claim 5)**

Dr. Coleman makes the cursory statement that, "Plaintiff did not file any grievances naming Dr. Coleman for the denial of Plaintiff's neoprene brace for his right knee and left ankle in March 2018 and the denial of a soft mattress and pillow for placement between his legs." Defendants' Brief (ECF No. 28, PageID.370). In his amended complaint, plaintiff cites grievance IBC 19-10-2398-12D3 ("2398"). *See* Amend. Compl. at PageID. 303; Grievance 2398 (ECF No. 28-2, PageID.443-448). Contrary to plaintiff's representation, grievance 2398 does not address a soft mattress and pillow; rather plaintiff's "grievance complaint" requests "immediate transfer to 'Cotton' facility [JCF] in Jackson for treatment directed at Duane Waters," claiming that Dr. Sices has placed "'profit' before health" and plaintiff wants no further treatment from the doctor. Grievance 2398 at PageID.446-448.[6] Plaintiff has failed to properly exhaust this claim. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendants' motion for summary judgment should be granted with respect to claim 5 directed at Dr. Coleman.

        **d.**      **Dr. Sices removed plaintiff from insulin therapy and snack-bag detail because he did not qualify for treatment (claim 6)**

In claim 6, plaintiff alleged that Dr. Sices removed him from insulin therapy and a diabetic snack bag detail on October 1, 2019. Amend. Compl. at PageID.304. Based on the record, plaintiff did not exhaust this claim before he filed the original complaint on November 8, 2019. As discussed, *supra*, the amended complaint identified two grievances: 2399 (ECF No. 28-2, PageID.454-458); and 2571 (ECF No. 28-2, PageID.428-432). In grievance 2399, plaintiff

---

[6] The Court discusses grievance 2398 with respect to plaintiff's claim against Corizon. *See* § II.B.3.e., *infra*.

claimed that Dr. Sices took him off of insulin on October 1, 2019 and required him to turn over all of his diabetic material on October 22, 2019 (PageID.457). In grievance 2571, plaintiff claimed that as of October 22, 2019, Dr. Sices treatment of his diabetes was a complete failure (PageID.431). While neither grievance 2399 nor 2571 were exhausted when plaintiff filed the original complaint, both were exhausted when plaintiff filed his amended complaint on July 21, 2020. *See Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017) ("we hold that the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim").[7]

Nevertheless, defendants should be granted summary judgment on this claim. Although plaintiff filed both grievances before he filed the amended complaint, he did not *properly* exhaust either of the grievances. The MDOC rejected grievance 2399 as untimely, apparently based upon plaintiff's claim that Dr. Sices removed him from insulin therapy on October 1, 2019. *See* Grievance 2399 at PageID.458). The rejection was affirmed at Steps II and III. *Id*. at PageID.454, 456. The MDOC denied grievance 2571 at Steps I and II, but then rejected the Step III appeal because it was untimely. *Id*. at PageID.428-432. Plaintiff has failed to properly exhaust this claim. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendants' motion for summary judgment should be granted with respect to claim 6 directed at Dr. Sices.

        e.      **Corizon engaged in an unconstitutional "practice of profit before treatment" (claim 7).**

---

[7] While defendants state that plaintiff filed seven grievances after he filed the complaint on November 8, 2019, two of those grievances were filed before plaintiff filed his original complaint. *See* Defendants' Brief at PageID.366-369; Grievance 2399 (received by the MDOC on October 22, 2019); Grievance 2398 (received by the MDOC on October 29, 2019).

Defendants list three grievances which named Corizon, all of them filed after plaintiff filed his original complaint: grievance 2398; IBC 19-12-2705-12I3 ("2705"); and IBC 19-12-2764-12F3 ("2764"). Defendants' Brief (ECF No. 28, Page ID.366). The Court will address these three grievances which were exhausted before plaintiff filed his amended complaint. *See Mattox*, 851 F.3d at 595.

The Court previously discussed 2398. Plaintiff directed this grievance at Dr. Coleman, Dr. Sices, and Corizon, claiming that health care was being deliberately indifferent to his serious medical needs, and requesting a transfer to a different correctional facility. The grievance was denied at Steps I and II, but was rejected at Step III because plaintiff listed multiple issues contrary to the Policy Directive. PageID.443-447. Accordingly, plaintiff did not properly exhaust grievance 2398.

In grievance 2705, plaintiff claimed that Dr. Coleman, Dr. Sices, and Corizon denied his special accommodations for increased pain medication, orthopedic shoes, and a mattress (ECF No. 28-2, PageID.426). This grievance involved defendants' alleged failure to follow the December 11, 2019 recommendations of "Dr. Bashere" for "increased pain meds, no steps [*i.e.*, a ground floor cell], orthopedic shoes AND mattress." *Id*. (emphasis in original). Plaintiff claimed that the three defendants were refusing the accommodations due to guidelines set forth in a contract with Aetna Life & Casualty. *Id*. This grievance was denied at Step I, noting that "[t]he provider is trying to get the report from the [offsite] neurologist to determine what accommodations are needed.". PageId.427. The grievance was denied at the Step II and Step III appeals. PageID.425 and 427. Based on this record, it appears that grievance 2705 exhausted plaintiff's claim 7 that

Corizon was putting "profit before treatment" by limiting its treatment of prisoners to the guidelines set forth in an insurance contract.[8]

In grievance 2764, plaintiff claimed that Dr. Coleman, Dr. Sices, and Corizon denied renewal of his pain medication. PageID.421. This grievance was denied at Steps I and II. PageID.420, 422. However, the Step III appeal was rejected as untimely. PageID.418. Accordingly, plaintiff did not properly exhaust grievance 2705.

In summary, plaintiff properly exhausted grievance 2705 with respect to claim 7 directed against Corizon. For this reason, defendants' motion for summary judgment should be denied with respect to this claim.

### IV. Recommendation

Accordingly, I respectfully recommend that defendants' motion for partial summary judgment for lack of exhaustion (ECF No. 28) be **GRANTED** as to plaintiff's claims that defendant Dr. Coleman denied plaintiff a neoprene brace for his right knee and left ankle (claim 1), that Dr. Coleman denied plaintiff a soft mattress and a pillow to use in between his legs (claim 5), and, that Dr. Sices removed plaintiff from insulin therapy and snack-bag detail because he did not qualify for treatment (claim 6).

I further recommend that defendants' motion (ECF No. 28) be **DENIED** as to plaintiff's claim that Dr. Sices denied plaintiff's request for nerve and pain medication (claim 4) and that Corizon engaged in a practice which violated his constitutional rights (claim 7).

---

[8] The Court notes that grievance 2705 refers to Dr. Coleman's refusal to provide him special accommodations, including a mattress, as recommended by Dr. Bashere on December 11, 2019. The grievance does not address plaintiff's claim 5, which alleged that Dr. Coleman failed to provide accommodations of a soft mattress and a pillow as recommended by Dr. Dafnis on August 19, 2019.

Based on these recommendations and defendants' admissions, this action should proceed against defendant Dr. Sices as to claims 2 and 4, Dr. Coleman as to claim 3, and Corizon as to claim 7.


Dated: February 10, 2021 　　　　　　　　　　　　/s/ Ray Kent
　　　　　　　　　　　　　　　　　　　　　　　Ray Kent
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).