UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK EARL WHITE,

                Plaintiff,

v.

CORIZON, INC., *et al.*,

                Defendants.

_____/

Case No. 1:19-cv-948

Hon. Hala Y. Jarbou

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a prisoner in the custody of the Michigan Department of Corrections (MDOC). This matter is now before the Court on a motion for summary judgment for failure to exhaust administrative remedies filed by defendant R.N. Jennifer Stillman (ECF No. 76).[1]

### I.      Plaintiff's claim against defendant R.N. Stillman

The amended complaint (ECF No. 27) alleged as follows:

> On 7/10/19 Plaintiff was called to Health Care and issued a wheelchair. Two (2) hours later RN ____ Stillman ordered Plaintiff to return the wheelchair and use the "unit" chair. Plaintiff explained the unit chair was being used by M.S.T.A. gang member Coleman who threatened anyone trying to use "his" chair. Plaintiff grieved the issue that it was health care's duty to provide a wheelchair and the lack of one was causing further damage in violation of U.S. Const. Am. 8. Grievance denied #LCF-19-07-0544-12D1.

Amend. Compl. at PageID.301.

### II.      Defendant R.N. Stillman's motion for summary judgment

### A.      Legal standard

---

[1] As discussed, *infra*, defendant RN Jennifer Stillman is also know as Jennifer Fleenor.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment.  The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Lack of Exhaustion

### 1.    Exhaustion requirement

Defendant R.N. Stillman contends that plaintiff failed to exhaust his claim against her.  The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies.  *See Porter v. Nussle*, 534

U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

## 2.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective March 18, 2019).[2]  A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ Q.  If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff.  *Id.* at ¶¶ Q and S.  The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where,

---

[2] The Court notes that the March 18, 2019 version of the grievance policy applies to plaintiff's claim against defendant Stillman which allegedly occurred in July 2019.

3

why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original).  The prisoner must send the Step I grievance to the appropriate grievance coordinator.  *Id.* at ¶ W.  If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator.  *Id.* at ¶ DD.  Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ HH.

**3.  Discussion**

In his amended complaint, plaintiff specifically alleged that he grieved his claim against defendant R.N. Stillman in grievance LCF-19-07-0544-12D1 ("544").  However, plaintiff's MDOC Step III Grievance Report shows that he only exhausted one grievance at LCF after the alleged incident, that being LCF-19-0846-28E ("846").  *See* MDOC Prisoner Step III Grievance Report ("Grievance Report") (ECF No. 77-3, PageID.964).  Grievance 846 was not related to plaintiff's claim against Stillman.  Rather, this grievance listed an incident date of August 2, 2019, and complained of a conspiracy against plaintiff and an alleged retaliatory transfer to the Gus Harrison Correctional Facility (ARF) in Adrian, Michigan.  *See* Grievance 846 (ECF No. 77-3, PageID.996).  The MDOC rejected the grievance, which plaintiff appealed through Step III.  *See id.* at PageID.994.

In his response, plaintiff now states that his allegation regarding the exhaustion of grievance 544 against defendant Stillman was a mistake.  Plaintiff's Response (ECF No. 79, PageID.1000).  In this regard, grievance 544, claimed that unnamed medical providers committed 8th Amendment violations on or before June 5, 2019 – more than a month before defendant Stillman allegedly took away the wheelchair.  *Id.* at PageID.1016.

4

In his response, plaintiff identified the operative grievance as LCF-07-0677-12I ("677"). *See* Grievance 677 (ECF No. 79-4, PageID.1022).  In this grievance, plaintiff stated: that Stillman told plaintiff that he could use the unit wheelchair; that plaintiff stated there is no unit wheelchair available; and that Stillman replied that it was up to the unit custody staff to provide one. *Id*. After an investigation, the MDOC denied the grievance on July 30, 2019, issuing a supplemental response which noted that plaintiff's medical detail allowed the accommodation of "Wheelchair-distance" until October 1, 2019, meaning that plaintiff was allowed to use the unit wheelchair for distance travel through that date. *Id*. at PageID.1022-1023.  There is no evidence that plaintiff appealed the denial of this grievance.

To explain his failure to exhaust grievance 677, plaintiff contends that he could not exhaust the grievance.  In support of his claim, plaintiff attempts to link his failure to exhaust grievance 677 with a statement made by non-party Deputy Warden Morrison at an unspecified date.  According to plaintiff, sometime after he filed grievance 677, Morrison told him "to cease all complaints against staff and a particular gang or be rode out." Statement of Facts (declaration) (ECF No. 79-1, PageID.1008-1009).   Plaintiff states the "[he] was denied the step II form to complete grievance #LCF-19-07-0677-262I [sic]" and "was placed in segregation and transferred to a facility where an active case of 'failure to protect' was pending and plaintiff has enemies. . ." *Id*. at PageID.1009.  Plaintiff states that "[he] was threatened and prevented from completing LCF #19-07-0677-26I by 'now' Warden Bryan Morrison, whom continues his threats and retaliation currently and has once again threatened to transfer plaintiff to a facility with enemies. .  ." *Id*. at PageID.1009.

While plaintiff makes general statements regarding non-party Morrison, he presents a vague timeline and does not set out his efforts to secure a Step II appeal form for grievance 677.

Plaintiff's assertion that he "was denied the step II form" is a conclusory statement "unadorned with supporting facts" and is insufficient to establish a factual dispute that will defeat summary judgment. *See Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

In this regard, the record reflects that plaintiff continued to appeal LCF grievances after the date he filed grievance 677 (July 15, 2019). *See* Step III Grievance Report at PageID.964-965 (grievance LCF-19-06-0543-17A (filed June 6, 2019, Step III appeal received Sept. 26, 2019); grievance 544 (filed June 18, 2019, Step III appeal received July 24, 2019); LCF-19-06-547-28B (filed June 7, 2019, Step III appeal received July 24, 2019); and grievance 846 (filed Sept. 4, 2019, Step III appeal received Nov. 15, 2019). Plaintiff continued to file grievances after his transfer to ARF in August 2019: ARF-19-08-1951-27A (Step I received Aug. 9, 2019); ARF-19-08-1955-19Z (Step I received Aug. 9, 2019); ARF-19-08-1959-28E (Step I received Aug. 9, 2019); and ARF-19-08-2015-28E (Step I received Aug. 14, 2019). *Id*. at PageID.963-965.

Based on this record there is no genuine issue of material fact which supports plaintiff's claim that someone denied him a Step II appeal form for grievance 544. Plaintiff has failed to properly exhaust his claim against R.N. Stillman. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendant Stillman's motion for summary judgment should be granted.

### III.    Recommendation

For these reasons, I respectfully recommend that defendant R.N. Stillman's motion for summary judgment (ECF No. 76) be **GRANTED** and that she be **DISMISSED** from this case.

Dated:  October 14, 2021                         /s/ Ray Kent
                                                 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).