UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK EARL WHITE,

        Plaintiff,

Case No. 1:19-cv-948

Hon. Jane M. Beckering

v.

CORIZON INC., *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Mark Earl White ("White"), a state prisoner in the custody of the Michigan Department of Corrections (MDOC). White's remaining claims are against defendants Corizon Health, Inc. (referred to as "Corizon, Inc." or "Corizon"), Dr. Rickey Coleman, and Dr. Peter Sices. This matter is now before the Court on a motion for summary judgment filed by defendants Corizon, Dr. Coleman, and Dr. Sices (ECF No. 119).

    **I.**    **Background**

White's medical record reflects treatment at a number of MDOC correctional facilities: on March 8, 2018, White was transferred to the Richard A. Handlon Correctional Facility (MTU) (ECF No. 119-1, PageID.1352); on June 21, 2018, he was transferred to Kinross Correctional Facility (KCF) (Medical Record (*id*. at PageID.1384); on December 13, 2018, he was transferred to the Lakeland Correctional Facility (LCF) (*id*. at PageID.1394); on August 2, 2019, he was transferred to the Gus Harrison Correctional Facility (ARF) (*id*. at PageID.1449); and on

1

August 28, 2019, he was transferred to Bellamy Creek Correctional Facility (IBC) (*id*. at PageID.1466-1469).   The remaining claims are set forth in White's Third Amended Complaint as follows:

> CLAIM 2:   That on or before March 23, 2018, Dr. Sices improperly removed plaintiff from snack bag therapy for insulin injection due to a practice, custom & habit by Corizon Corp. to save money at all costs.  This established a practice, pattern, custom & habit by Dr. Sices in plaintiffs [sic] diabetic treatment, in violation of plaintiffs [sic] U.S. Const Am. Right VIII.
>
> CLAIM 3:  That on or before March 25, 2019. Dr. Coleman denied a Michigan Dept. of Corrections (MDOC) physical therapist recommendation for a patellar tracking brace for plaintiffs [sic] right knee, which led to swift deterioration and knee replacement surgery and also denied athletic orthopedic shoes to compensate for plaintiffs [sic] 2cm right leg length difference.  This caused plaintiff to walk "off-balance" which was the principle cause of an accident on June 11, 2019 which caused severe back injury leading to fusion surgery and lifetime pain, in violation of plaintiffs [sic] U.S. Const. Am. Right VIII.
>
> CLAIM 4:  That when plaintiff transferred to Bellamy Creek facility the treating physician reduced plaintiffs [sic] nerve pain medication "Cymbalta" from 80 mg to 20 mg, and this resulted in increased nerve pain not treated by the "Ultram" plaintiff was receiving for physical pain.   Defendant Dr. Sices threatened plaintiff that if he complained about the "Ultram" or his treatment AT ALL by Dr. Sices that he would take away all pain medication and stop all treatments.  In violation of plaintiffs U.S. Const Am Right VIII.
>
> CLAIM 7:   That defendants Corizon Corp. has been deliberately indifferent to plaintiffs [sic] serious medical needs by engaging in a "practice of profit before treatment" in violation of plaintiffs [sic] U.S. Const. Am. Right VIII.
>
> SUPP CLAIM I:   Dr. Sices, in support of his threat did stop all pain threapy [sic] treatment in December 2019 in response to plaintiffs [sic] request to nuerosurgeon [sic] Dr. A Bashere to provide pain treatment for nerve pain.  This violated plaintiffs [sic] U.S. Const. Am. Right VIII. (see grievance #IBC-19-12-2764-12F3) (also mentioned in #IBC-20-01-0131-12F3)[.]
>
> SUPP CLAIM II:   Defendant Dr. R. Coleman, acting color of state law, and despite numerous recommendations from specialists and "examining" doctors denied plaintiff athletic shoes with a 2 cm lift on right shoe.   This denial has caused further pan, suffering and permanent damage to plaintiffs lower back and is in violation of plaintiffs U.S. Const. Am. Right VIII.

>   SUPP CLAIM III:   Defendant Dr. Peter Sices, while acting under color of State law did deny plaintiff <u>all treatment</u> for diabetes from January 28, 2020, to February 4, 2020 (actual medicine not given until February 6, 2020), and did so in retaliation for complaining about his method of diabetic treatment establishing a custom, practice habit by Defendant Sices in violation of plaintiffs [si] U.S. Const. Am. Right VIII.
>
>   RELATION BACK CLAIMS
>
>   RELATION BACK AMENDMENT I:
>
>   [Denied per Order (ECF No. 112, PageID.1291-1292)]
>
>   RELATION BACK AMENDMENT II:   Corizon Corp., while acting as a State contractor, and under color of State law, did engage in a pattern of denying proper treatment and orthopedic aides to plaintiff in violation of the Americans with Disabilities Act (A.D.A.), Title 42 USC § 12101, § 12132 et seq[.]

Third Amend. Compl. (ECF No. 113, PageID.1296-1299).

## II.   Defendants' motion for summary judgment

### A.   Legal standard for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

>   (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
>   (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Eighth Amendment claims

#### 1. Legal Standard

White seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id*. at 8-9. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. at 9. "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (internal quotation marks omitted). "[T]his care qualifies as 'cruel and unusual' only if it is 'so grossly incompetent' or 'so grossly inadequate' as to 'shock the conscience' or 'be intolerable to fundamental fairness.'" *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021). "For prisoners to prove grossly inadequate care, moreover, courts generally require them to introduce medical evidence, typically in the form of expert testimony." *Id*.[1] A prisoner's

---

[1] As the Court explained in *Phillips*, 14 F. 4th at 535:

"This medical-evidence requirement makes sense in a world in which the Supreme Court looks to the 'evolving

5

disagreement with his physicians over the proper course of treatment "alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017). In short, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an 8th Amendment violation. *Id*. at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Stated another way, the plaintiff must prove that each defendant acted with a "sufficiently culpable state of mind, equivalent to criminal recklessness." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40) (internal quotation marks omitted).

    **2.**    **Dr. Sices**

    **a.**    **Diabetes treatment**

---

standards of decency' to determine the Eighth Amendment's standards. *Estelle*, 429 U.S. at 106. Even for garden-variety negligence claims, '[t]he overwhelming weight of authority supports the view that ordinarily expert evidence is essential to support an action for malpractice against a physician or surgeon.' H.H. Henry, Annotation, *Necessity of Expert Evidence to Support an Action for Malpractice Against a Physician or Surgeon*, 81 A.L.R. 2d 597, § 2 (1962 & Supp. 2021) (collecting cases). So a medical-evidence requirement sits comfortably within society's 'decency' standards. And it would be odd if a prisoner could prove an Eighth Amendment claim more easily than an ordinary individual could prove a malpractice claim."

### i. Claim 2

In Claim 2, White alleged that on March 23, 2018, Dr. Sices removed him "from snack bag therapy for insulin injection." The record reflects that Dr. Sices treated White's diabetes. As of March 12, 2018, Dr. Sices added an acucheck order, "changed metformin from 850 mg TID to 1000 mg BID," discontinued White's snack bag, and noted that White "refused a couple doses insulin" on March 11, 2018. Medical Records (ECF No. 119-1, PageID.1354). The doctor also noted that White's glucose was controlled. *Id.* Dr. Sices explained:

> 3. On March 12, 2018, I performed a chart review. I ordered Mr. White's accuchecks continue to be performed twice daily and decreased the quantity of his Acetaminophen to one 325 mg tablet taken twice daily, and noted his naproxen would be reduced.
>
> 4. At that time, I adjusted his Metformin from 850 mg three times a day, to 1000 mg twice per day. All other medications were renewed aside from two anti-fungal creams. Mr. White's evening snack bag was discontinued as his glucose was controlled. I noted Mr. White's chronic care visit was scheduled for May, with a lab draw to be completed at that time. I placed a 407 request for a liver ultrasound to monitor his cirrhosis.

Sices Aff. (ECF No. 119-2, PageID.1533).

A clinical progress note by RN Kristie J. Badder dated March 14, 2018, indicates that White appeared angry, stated "that he had been given this snack bag detail at another facility" and that "if I have to get a lawyer I will." Medical Record at PageID.1357. Later that month, Dr. Sices performed another chart review due to White's refusal to follow instructions for treating his diabetes:

> 5. On March 21, 2018, I conduced a chart review due to Mr. White's accuchecks refusals and to determine if he had any unnecessary details. I placed a clarification note into his chart stating his snack bag was discontinued upon arrival to MTU for lack of medical necessity as he had other means to control his blood sugar including prescribed glucose tablets and other food stuffs. I reported Mr. White's Metformin was altered on arrival to enhance his compliance with medication, as virtually no

7

one is prescribed three daily doses of Metformin as very few people will remember to take them. I noted Mr. White was noncompliant with monitoring and treatment of his diabetes.

*Id*.

Dr. Sices met with White on March 23, 2018. *Id*. At that time, White disagreed with the decision to discontinue his snack bag. *Id*. According to the doctor, White refused insulin because he had an unpleasant interaction with a nurse on the morning insulin line. *Id*. "White agreed he would take only ten units of insulin in the evening, but refused morning accuchecks when the unidentified nurse was running the med line." *Id*.

Dr. Sices also had to address White's pattern of noncompliance with medical treatment. In a March 28, 2018 progress note, Dr. Sices documented White's ongoing refusal of accuchecks and insulin and noted that "no further intervention was planned." *Id*. at PageID.1535; Medical Record at PageID.1375.

The record reflects that Dr. Sices provided White with ongoing treatment for diabetes, despite White's noncompliance with treatment. The record reflects that Dr. Sices exercised his professional medical judgment in discontinuing White's evening snack bag. While White points out that other medical providers at other correctional facilities allowed him to have a snack bag as part of his diabetes treatment,[2] this does not establish that Dr. Sices' course of treatment was "grossly inadequate." In the end, it appears that Claim 2 is nothing more than White's disagreement with Dr. Sices' decision to discontinue the snack bag. Such disagreement is not cognizable under § 1983. *See Darrah*, 865 F.3d at 372. Accordingly, the Court should grant Dr. Sices' motion for summary judgment on Claim 2.

---

[2] *See* White's Response (ECF No. 128, PageID.1634, 1646).

### ii.     Supplemental Claim III

In Supplemental Claim III, White alleged that Dr. Sices denied him all treatment for diabetes for eight days, from January 28, 2020, to February 4, 2020.[3] A record from January 28, 2020, reflects that White had been complaining to nurses and corrections officers each day of his "plummeting" blood sugars. Medical Record at PageID.1527. Based on this report, Dr. Sices changed White's medications:

> [White] continues to complain of "plummeting" blood sugars. Glipizide is discontinued. Will discontinue metformin as well, and monitor. Also, will investigate the availability of sulfonylurea urine panel in order to rule out surreptitious self-medication. If available, this will probably require authorization first. If done, must be done random and unannounced.

*Id.*

Dr. Sices explained the background for this situation in his affidavit:

> 29. On January 8, 2020, I evaluated Mr. White during a provider visit. Mr. White requested a glucometer, which I agreed with. I advised that it was appropriate for him to self-titrate the glipizide, taking less if he was skipping a meal or exercising. . .
>
> 30. I conducted a chart review on January 21, 2020. Mr. White's neurosurgical notes were reviewed, and a 407-request was submitted for lumbar fusion surgery. I noted Mr. White's blood glucose values ran from mildly hypoglycemic to normal, and he had flexibility to titrate his glipizide dosing.
>
> 31. Mr. White requested a snack bag on January 27, 2020. I noted Mr. White did not have a medical need for a snack bag, and he should be down-dosing his glipizide as needed to control his blood sugars, and that if he was not taking glipizide at all, that healthcare should be informed.
>
> 32. I conducted a chart review on January 28, 2020, noting Mr. White continued to complain of plummeting blood sugars. I discontinued his glipizide and Metformin as a result and noted I would monitor his blood sugar. I noted I would investigate a

---

[3] The Court notes that while White included the word "retaliation" in Supplemental Claim III, he has alleged that this claim involved an Eighth Amendment violation.

> sulfonylurea urine panel to rule out surreptitious self-medication. The lab was ordered in order to rule out sulfonylureas that he had previously been prescribed.
>
> 33. On February 4, 2020, I met with Mr. White for a scheduled evaluation. Mr. White complained of his diabetes medication being discontinued, and that he was having dangerously low blood sugars, which was why I discontinued his diabetic medications. Mr. White stated his blood sugars were now elevated again. Mr. White again mentioned a snack bag and reported he could control his blood glucose by taking a Metformin tablet at noon and twice in the evening, and one glipizide pill in the evening. I agreed with the plan if he believed he could comply with the plan, and I reinforced he could cut glipizide if necessary. Mr. White was agreeable. Mr. White requested Meloxicam be increased to twice the current dose, and he acknowledged he understood he had a spinal surgery coming up. Mr. White did not present agitated and did not reveal any sign of pain or distress.
>
> 34. On February 5, 2020, I met with Mr. White for a pre-operation evaluation. Mr. White's blood sugar was fairly well controlled, and he was becoming accustomed to an oral regimen. . .

*Id*. at PageID.1540-1541.  *See* Medical Record at PageID.1521-1531.

The medical record reflects an on-going discussion between a doctor and patient with respect to diabetes treatment. Contrary to White's contention, Dr. Sices continued to treat his diabetes by discontinuing medication which appeared to be causing dangerously low blood sugars. Accordingly, the Court should grant Dr. Sices' motion for summary judgment on Supplemental Claim III.

      **b.**    **Pain therapy**

      **i.**    **Claim 4**

In Claim 4, White alleged: that when he transferred to IBC the treating doctor reduced his "nerve pain medication" Cymbalta; that this resulted in increased nerve pain not treated by the Ultram he was receiving for "physical pain" from Dr. Sices; and that Dr. Sices threatened that if he complained about the Ultram or his treatment, he would take away all pain medication

10

and stop all treatments.[4]   White's claim is confusing.   Dr. Sices did not prescribe or reduce the Cymbalta prescription when White transferred to IBC.   The mental health provider, NP Leona B. Meengs, made the decision to reduce White's Cymbalta prescription after reviewing his medical records on September 3, 2019:

> He is a new ride in. I received communication from his psych case manager to clarify Cymbalta order. Prisoner stated his dose was reduced.
>
> Chart review:
>
> Prisoner White has a bipolar diagnosis and treated with Cymbalta monotherapy.
>
> Prisoner had been prescribed Cymbalta 20 mg AM and 40 mg Noon and Bedtimes. On 5/28/19 Psych pharm Progress note provider reduced dose to 20 mg AM and 40 mg Noon, stopping HS dose. Psych pharm note of 5/13/19 indicates that "exacerbated mood" improved after dose reduction.
>
> Per record is Cymbalta 20 mg AM only and 40 mg had expired.
>
> I will renew to lower dose of 20 mg BID unto prevent rebound depression.

Medical Record at PageID.1469.   NP Meengs also included "Specific Plan Instructions":

> Medication Progress and Rationale for Change in Medication: Bipolar diosrder with cymbalta monotherapy. Restart Cymbalta at 20 mg BID. He had been at 50 mg a few days ago.

*Id*. at PageID.1470.

With respect to Ultram (tramadol), White's medical record reflects that on December 6, 2019, his "regular script for tramadol" expired, that Dr. Sices added an emergency 5-day extension, and that the doctor requested approval to bridge White on the medication until the Pain Management Committee renewed the medication.   Medical Record at PageID.1506.

---

[4] The Court notes that while White's Claim 4 referred to an alleged "threat" by Dr. Sices, the Third Amended Complaint stated an Eighth Amendment deliberate indifference claim for failure to provide pain medication, not a First Amendment retaliation claim.

11

*See* Dr. Sices Aff. at PageID.1539 ("On December 6, 2019, I placed a 407-request for immediate pain management committee ("PMC") review of Mr. White's pain medications. I also requested a 30-day bridge order for the Ultram pending the decision from the PMC, and an emergency five-day extension."). There is no evidence to support White's claim that Dr. Sices interfered with NP Meengs Cymbalta prescription or deprived him of Ultram. On the contrary, Dr. Sices ensured that White had pain medication when his Ultram prescription expired on December 6, 2019. Accordingly, the Court should grant Dr. Sices' motion for summary judgment as to Claim 4.

### ii.     Supplemental Claim I

In Supplemental Claim I, White alleged that Dr. Sices stopped all pain therapy in December 2019 because White requested that a neurosurgeon, Dr. Bashere, provide pain treatment for nerve pain. As discussed, *supra*, Dr. Sices did not stop White's Ultram prescription. When the prescription expired in December 2019, Dr. Sices took steps to ensure that White continued to have Ultram while the PMC reviewed the pain medication. There is no evidence to support White's claim that Dr. Sices stopped all pain medication due to a request made to Dr. Bashere. Accordingly, the Court should grant Dr. Sices' motion for summary judgment as to Supplemental Claim I.

### 3.     Dr. Coleman

#### a.     Patellar tracking brace (Claim 3)

In Claim 3, White alleged that on or about March 25, 2019, Dr. Coleman denied an MDOC therapist's recommendation for a patellar tracking brace for his right knee and athletic orthopedic shoes to compensate for his 2cm right leg length difference. According to White, the

denial of these recommendations led to an accident on June 11, 2019, which caused White severe back injury, which led to fusion surgery and a lifetime of pain.

NP Groff evaluated White on March 25, 2019. Medical Record at PageID.1404-1407). To meet his physical therapy goals, Groff's plan included: a 2-inch sole on right shoe; a patellar tracking brace; and a progressive home exercise program. *Id*. at PageID.1406. Based on the evaluation and a right knee x-ray, Groff requested a patellar tracking brace and an orthotic shoe with 2-inch sole. *Id*. at PageID.1407-1408.

In his affidavit, Dr. Coleman explained his review of this request:

> On March 27, 2019, I reviewed NP Groff's ACMO request for a patellar tracking brace and orthotic shoe with a two-inch sole. I approved a shoe with a two-inch sole on the right foot but deferred the orthotic shoe and patellar tracking brace because they were not authorized per MSAC guidelines.

Coleman Aff. (ECF No. 119-3, PageID.1545). *See* Medical Record at PageID.1408; MSAC (Medical Services Advisory Committee) Guidelines (ECF No. 119-4, PageID.1547). Based on this record, Dr. Coleman's decision to defer the patellar tracking brace and orthotic shoe were based on his professional judgment after reviewing NP Groff's evaluation and White's medical record. White has failed to demonstrate that Dr. Coleman's deferrals were "grossly inadequate" to treat White's condition or that the doctor acted with culpable state of mind equivalent to criminal recklessness. Accordingly, the Court should grant Dr. Coleman's motion for summary judgment as to Claim 3.

      **b.**    **Athletic shoes with a 2 cm lift on right shoe (Supplemental Claim II)**

In Supplemental Claim II, White alleged that Dr. Coleman denied him athletic shoes with a 2 cm lift on right shoe despite recommendations by other doctors. On March 24, 2018, Dr. Coleman reviewed Dr. Sices' request for an athletic shoe detail. Coleman Aff. at

13

PageID.1544. *See* Medical Record at PageID.1370. Previous MDOC medical records indicated that White had "some neuropathy, open blister from state shoes." *Id*. Dr. Coleman deferred Dr. Sices request for athletic shoes pending a neuropathy screening score. *Id*. Dr. Coleman approved the athletic shoes two days later, after the screening revealed moderate neuropathy (diabetic neuropathy). *Id*. at PageID.1374. In short, White received the athletic shoes. Finally, while White refers to a "2 cm lift on right shoe", this accommodation is not part of the March 24, 2018, request. *Id*. Accordingly, the Court should grant Dr. Coleman's motion for summary judgment as to Supplemental Claim II.

### 4. Corizon (Claim 7)

In Claim 7, White alleged that Corizon was deliberately indifferent to his serious medical needs because it engages in a "practice of profit before treatment" in violation of the Eighth Amendment. Private corporations performing state functions, such as Corizon, cannot be held liable under § 1983 on a theory of vicarious liability. *See Street v. Corrections Corporation of America*, 102 F.3d 810, 817-18 (6th Cir. 1996), citing *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Under the rule set forth in *Monell*, while a plaintiff may seek damages against a governmental entity, those damages cannot be premised upon vicarious or respondeat superior liability. *Monell*, 436 U.S. at 691-93. Rather, a plaintiff must establish that the entity's custom, policy, or practice resulted in the deprivation of his constitutional rights. *Id*. at 690-91.

Here, White's medical records (PageID.1352-1531) reflect that he was provided extensive medical care during the relevant time period. White has presented no facts to support his speculation that Corizon engaged in an unconstitutional practice or policy related to providing health care. *See Crawford v. Michigan Department of Corrections*, No. 2:09-cv-7, 2010 WL

14

1424246 at *5 (W.D. Mich. March 31, 2010) (prisoner's claim against private corporation providing medical care at a state prison dismissed where he pleaded no facts to support an allegation that his medical treatments were based upon cost concerns). *See also, Hamer v. County of Kent*, No. 1:13-cv-504, 2014 WL 1276563 at *4 (W.D. Mich. March 27, 2014) (in rejecting plaintiff's argument that a conflict exists between a prisoner's medical needs and a private corporation's desire to make a profit providing medical services, the court observed that "The same could be said, of course, about any HMO or other capitated health insurance system, all of which create an inherent tension between patient care and the cost of care. This hardly raises a plausible inference of deliberate indifference to serious medical needs."). Accordingly, the Court should grant Corizon's motion for summary judgment on Claim 7.

### C. ADA claim against Corizon (Relation Back Amendment II)

In his Relation Back Amendment II, White alleged that Corizon, while acting as a State contractor, engaged in a pattern of denying proper treatment and orthopedic aides to plaintiff in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 and 12132 *et seq*.

Section 12132 provides in pertinent part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." "To establish a prima facie case of intentional discrimination under Title II of the ADA, a plaintiff must show that: (1) she has a disability; (2) she is otherwise qualified; and (3) she was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).

Here, White's ADA claim fails because

> Corizon is not a public entity and therefore not subject to Title II. Put simply, Corizon—a private healthcare company—did not become a public entity by contracting with the State government to provide health services to prison inmates.

*Bell v. Washington*, No. 2:21-CV-12481, 2022 WL 2346371 at *2 (E.D. Mich. June 29, 2022), citing *Cox v. Jackson*, 579 F. Supp. 2d 831, 852 (E.D. Mich. 2008) (a private contractor does not become a "public entity" under Title II merely by contracting with a governmental entity to provide governmental services.). Accordingly, the Court should grant Corizon's motion for summary judgment on the ADA claim alleged in Relation Back Amendment II.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (ECF No. 119) be **GRANTED** and that this matter be **DISMISSED**.

Dated: February 2, 2023                     /s/ Ray Kent
                                            RAY KENT
                                            United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).